IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SYMBOLOGY INNOVATIONS, LLC, | ) |
| *Plaintiff,* | ) ) ) Case No. _____ |
| v. | ) ) |
| BARILLA AMERICA, INC., | ) DEMAND FOR JURY TRIAL |
| *Defendant.* | ) ) ) ) |

 

*Barilla products promoting infringing QR code*

1
COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

1. Symbology Innovations, LLC ("Symbology" or "Plaintiff"), by and through its counsel, hereby brings this action for patent infringement against Barilla America, Inc. ("Barilla" or "Defendant") alleging infringement of the following validly issued patent (the "Patent-in-Suit"): U.S. Patent No. 8,936,190, titled "System and method for presenting information about an object on a portable electronic device" (the '190 Patent), attached hereto as Exhibit A.

## NATURE OF THE ACTION

2. This is an action for patent infringement arising under the United States Patent Act 35 U.S.C. §§ 1 et seq., including 35 U.S.C. § 271.

## PARTIES

3. Plaintiff Symbology Innovations, LLC is a Texas company with its principal place of business at 1400 Preston Road, Suite 400, Plano, TX 75093.

4. On information and belief, Defendant Barilla America, Inc. is a company organized under the laws of Illinois with its headquarters 885 Sunset Ridge Rd., Northbrook, IL 60062. Defendant may be served through its registered agent for process MS Registered Agent Services., 191 N Wacker Dr., Suite 1800, Chicago, IL 60606.

## JURISDICTION AND VENUE

5. This lawsuit is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 101 *et seq.* The Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1338(a), and 1367.

6. The Court has personal jurisdiction over Defendant for the following reasons: (1) Defendant is present within or has minimum contacts within the State of Illinois and the

Northern District of Illinois; (2) Defendant has purposefully availed itself of the privileges of conducting business in the State of Illinois and in this district; (3) Defendant has sought protection and benefit from the laws of the State of Illinois; (4) Defendant regularly conducts business within the State of Illinois and within this district, and Plaintiff's cause of action arises directly from Defendant's business contacts and other activities in the State of Illinois and in this District; (5) Defendant is incorporated in Illinois and has purposely availed itself of the privileges and benefits of the laws of the State of Illinois; and (6) Defendant has designated MS Registered Agent Services., 191 N Wacker Dr., Suite 1800, Chicago, IL 60606 as its representative for service of process within the State of Illinois.

7. Defendant, directly and/or through intermediaries, ships, distributes, uses, offers for sale, sells, and/or advertises products and services in the United States, the State of Illinois, and the Northern District of Illinois including but not limited to the products which contain the infringing '190 Patent systems and methods as detailed below. Upon information and belief, Defendant has committed patent infringement in the State of Illinois and this district; Defendant solicits and has solicited customers in the State of Illinois and in this district; and Defendant has paying customers who are residents of the State of Illinois and this district and who each use and have used the Defendant's products and services in the State of Illinois and in this district.

8. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §§ 1400(b). Defendant is incorporated in this district, has an established place of business in this district, has transacted business in this district, and has directly and/or indirectly committed acts of patent infringement in this district.

PATENT-IN-SUIT

9.     The Patent-in-Suit teaches systems and methods for an electronic device (*e.g.*, smartphone) to retrieve information about an object when the object's symbology (e.g. QR code) is detected.

SUMMARY OF INFRINGING ACTIONS

10.     Barilla is a household name throughout California and the United States. Defendant's products include a wide range of pasta noodles (*see* Ex. 1), pasta sauces (*see* Ex. 2), and microwave ready-made pasta dinners (*see* Ex. 3), all packaged in a blue box with the iconic Barilla red logo.

11.     Barilla's website describes the company's six central goals which have helped position Barilla as a "world leader in the markets of pasta" in over 100 countries and a brand that is "recognized worldwide." *See* Ex. 4. Among those goals is Barilla's commitment to "[r]elentlessly enhance [its] competitiveness" and "leverage digitalization and diversity" in order to build brand recognition, increase market share, and connect with customers. *See* Ex. 4. One of Barilla's strategies of leveraging digitalization is its use of QR codes.

12.     For example, in 2015 Cisco announced its partnership with Barilla to "implement a new technology platform called Safety for Food (S4F)." *See* Ex. 5. "Powered by the software ValueGo®, the platform enables consumers to scan a QR code on the back of limited-edition Farfalle Pasta and Tomato and Basil Sauce packages to easily access a website that tells the story of the specific production batch." *See* Ex. 5. The QR code technology, Cisco noted, allowed Barilla

to connect with consumers and increase its transparency.

13. By using QR codes to increase transparency, Barilla has been able to increase its market presence through customer engagement. After "scanning a QR code on the package," consumers are then "directed to Barilla's website" where they will become familiar with how Barilla produces the product carrying the code. *See* Ex. 6. From a consumer's perspective, Barilla's use of QR codes to increase transparency "is a very important element between brands and consumers," and the "only way for a brand to have a positive perception." *See* Ex. 7.

14. While Barilla increases the reach its brand by "creating a deeper connection between the customers" and the Barilla product, the QR code also has a direct benefit to Barilla through the ability to trace consumer activity. *See* Exs. 8, 9. Through tracing consumer activity, Barilla has benefitted through the data it generates and "further benefits in the form of business insights." *See* Ex. 9. Furthermore, through its QR code method Barilla is able to protect its brand from "counterfeit products, an issue estimated to represent as much as 10% of the total grocery market." *See* Ex. 10.

15. This drive to increase brand loyalty and collect consumer driven date is, in large part, a reason why the growth of QR codes in retail is becoming a modern phenomenon. *See* Ex. 8. It is predicted that by 2021, "80% of food, beverage, pet and personal care as well as household products will feature a smart label" such as the QR code method utilized by Barilla. *See* Ex. 8. In being quick to adapt to the new digital market, Barilla's market share in the United States "grew to a value of 32.8%." *See* Ex. 11 (Chairman's Letter in Barilla's most recent Annual Report 2017).

COUNT I
(Infringement of U.S. Patent No. 8,936,190)

16. Plaintiff incorporates by reference the allegations of paragraphs 1-15, the same as if

set forth herein.

17. The '190 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office ("USPTO") on January 20, 2015. The '190 Patent is presumed valid and enforceable. *See* 35 U.S.C. § 282.

18. Plaintiff is the owner by assignment of the '190 Patent and possesses all rights of recovery under the '190 Patent, including the exclusive right enforce the '190 Patent and pursue lawsuits against infringers.

19. On information and belief, Defendant has infringed and continues to infringe on one or more claims of the '190 Patent-directly, contributorily, and/or by inducement-by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

**Direct Infringement**

20. Defendant has been and now is directly infringing by, among other things, practicing all of the steps of the '190 Patent, for example, through internal testing, quality assurance, research and development, and troubleshooting. *See Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 775 (Fed. Cir. 1993) (noting that one practicing the patented method directly infringes); *see also* 35 U.S.C. § 271 (2006). For example, Defendant has directly infringed the Patent-in-Suit through testing, troubleshooting, and configuration of QR codes associated with its products and services. *See* Ex. 5 (where Cisco notes Barilla's development work for its infringing QR code method).

21. By way of example, Defendant has infringed and continues to infringe on at least one or more claims, including at least Claim 1 of the '190 Patent which teaches:

A method comprising:

      capturing a digital image using a digital image capturing device that is part of an electronic device;

      detecting symbology associated with the digital image using the electronic device;

      decoding the symbology to obtain a decode string using one or more visual detection applications residing on the electronic device;

      sending the decode string to a remote server for processing;

      receiving information about the digital image from the remote server wherein the information is based on the decode string;

      displaying the information on a display device associated with the electronic device.

22. On information and belief Defendant employs a method wherein a digital image (*i.e.*, "QR code") associated with its products is captured by the camera of an electronic device (*i.e.*, a smartphone or tablet) ("*capturing a digital image using a digital image capturing device that is part of a portable electronic device*"). See Figures 1, 2, and 3.





*Figure 1*        *Figure 2*        *Figure 3*

23. On information and belief, Defendant uses a smartphone, tablet, or similar device to detect symbology (*i.e.*, the QR code) associated with an object, such as the Defendant's

COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL

infringing product ("*detecting symbology associated with an object within the digital image using a portable electronic device*").



*Figure 4*

24. On information and belief, Defendant uses a smartphone, tablet, or similar device to decode the symbology to obtain a decode string (i.e., hyperlink) using the visual detection application residing in the smartphone or tablet ("*decoding the symbology to obtain a decode string using one or more visual detection applications residing on the portable electronic device*"). For example, a smartphone detects the symbology of the QR code on Defendant's product and decodes the digital image captured on the smartphone camera to produce a decoded hyperlink as shown in the figures below. The decoded string is sent to a remote server for processing as shown in Figure 5 ("*sending the decode string to a remote server for processing*").



*Figure 5*

25.      On information and belief, after clicking the hyperlink obtained by scanning the QR code associated with the product, the smartphone receives information about the product from a remote server. ("*receiving information about the object from the remote server wherein the information is based on the decode string of the object*"). The information is received and displayed on the smartphone as shown in Figure 6 below ("*displaying the information on a display device associated with the portable electronic device*").



*Figure 6*

26. Defendant not only designed the accused infringing QR method to practice the claimed invention, but also instructed its customers to use the accused method in an infringing way. For example, Defendant "enables consumers to scan a QR code on the back of limited edition Farfalle Pasta and Tomato and Basil Sauce packages to easily access a website that tells the story of the specific production batch, through a detailed analysis of all major phases of the supply chain." *See* Ex. 12.

**Induced Infringement**

27. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '190 Patent in the State of Wisconsin, in this judicial District, and elsewhere in the United States, by, among other things, making, using, offering for sale, and/or selling, without license or authority, products affixed with QR codes that require the accused technology for intended functionality, testing, configuration, troubleshooting, and other utilization. End users include, for example, customers, retail store personnel, and other third-parties.

28. Defendant took active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 932 (2005) ("[I]t may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

29. The allegations herein support a finding that Defendant induced infringement of the '190 Patent. *See Power Integrations v. Fairchild Semiconductor*, 843 F.3d 1315, 1335 (Fed. Cir. 2016)("[W]e have affirmed induced infringement verdicts based on circumstantial evidence of inducement [e.g., advertisements, user manuals] directed to a class of direct infringers [e.g.,

customers, end users] without requiring hard proof that any individual third-party direct infringer was actually persuaded to infringe by that material.").

### Contributory Infringement

30. On information and belief, Defendant contributorily infringes on Symbology's '190 Patent. Defendant knew or should have known, at the very least as a result of its freedom to operate analyses, that third parties, such as its customers, would infringe the '190 Patent by implementing Defendant's QR code technology.

31. On information and belief, Defendant's implementation of the accused functionality has no substantial non-infringing uses. *See, e.g., Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1321 (Fed. Cir. 2009) (holding that the "substantial non-infringing use" element of a contributory infringement claim applies to an infringing feature or component, and that an "infringing feature" of a product does not escape liability simply because the product as a whole has other non-infringing uses).

### Willful Infringement

32. On information and belief, the infringement of the '190 Patent by Defendant has been and continues to be willful. Defendant has had actual knowledge of Symbology's rights in the '190 Patent and details of Defendant's infringement based on at least the filing and service of this complaint. Additionally, Defendant had knowledge of the '190 Patent and its infringement in the course of Defendant's due diligence and freedom to operate analyses.

### Plaintiff Suffered Damages

33. Defendant's acts of infringement of the '190 Patent have caused damage to Symbology, and Symbology is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C.

§ 271. Defendant's infringement of Symbology's exclusive rights under the '190 Patent will continue to damage Symbology causing it irreparable harm for which there is no adequate remedy at law, warranting an injunction from the Court.

### REQUEST FOR RELIEF

34. Symbology incorporates each of the allegations in the paragraphs above and respectfully asks the Court to:

(a) enter a judgment that Defendant has directly infringed, contributorily infringed, and/or induced infringement of one or more claims of each of the '190 Patent;

(b) enter a judgment awarding Symbology all damages adequate to compensate it for Defendant's infringement of, direct or contributory, or inducement to infringe, the including all pre-judgment and post-judgment interest at the maximum rate permitted by law;

(c) enter a judgment awarding treble damages pursuant to 35 U.S.C. § 284 for Defendant's willful infringement of the '190 Patent;

(d) issue a preliminary injunction and thereafter a permanent injunction enjoining and restraining Defendant, its directors, officers, agents, servants, employees, and those acting in privity or in concert with them, and their subsidiaries, divisions, successors, and assigns, from further acts of infringement, contributory infringement, or inducement of infringement of the '190 Patent;

(e) enter a judgment requiring Defendant to pay the costs of this action, including all disbursements, and attorneys' fees as provided by 35 U.S.C. § 285, together with prejudgment interest; and

(f) award Symbology all other relief that the Court may deem just and proper.

Dated: June 2, 2019  Respectfully submitted,

/s/ Isaac Rabicoff
Isaac Rabicoff
Rabicoff Law LLC
73 W Monroe St
Chicago, IL 60603
(773) 669-4590
isaac@rabilaw.com

/s/ Kirk Anderson
KIRK. J. ANDERSON (*Pro Hac Vice admission pending*)
kanderson@budolaw.com
M. GRANT MCARTHUR (*Pro Hac Vice admission pending*)
gmcarthur@budolaw.com
BUDO LAW, LLP
5610 Ward Rd., Suite #300
Arvada, CO 80002
(720) 225-9440 (Phone)
(720) 225-9331 (Fax)

*Attorney(s) for Plaintiff Symbology Innovations, LLC.*